UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JIMMY GARDNER,
    Plaintiff,

v.                                       Case No. 3:11cv572 (MPS)

BRIAN K. MURPHY, ET AL.,
    Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*Pro se* plaintiff Jimmy Gardner, who at the relevant time was incarcerated at the State of Connecticut's Northern Correctional Institution (but now is incarcerated at another facility), claims that the defendants, correctional officials and employees, violated his Eighth Amendment right to be free from cruel and unusual punishment by forcing him to take his daily outdoor recreation session with his hands cuffed behind his back. He has submitted evidence that the handcuff requirement prevented him from obtaining a meaningful opportunity to exercise, and that alternative opportunities to exercise were, as a practical matter, unavailable.

Although a recent decision by this Court illustrates the types of evidence that the defendants would need to submit to defeat this claim, for the most part, they have not submitted such evidence, instead relying primarily on generic documents describing the policy requiring certain inmates to be cuffed behind their backs whenever they leave their cells. Because those documents are insufficient to justify the restriction the defendants have imposed on the plaintiff's right to obtain meaningful exercise, and because the defendants have otherwise failed to show the absence of material disputed facts, the major portion of their Motion for Summary Judgment is denied. The Court grants summary judgment to Defendant Dr. Carson Wright on the plaintiff's

separate claim that Dr. Wright was deliberately indifferent to his medical needs. The evidence in the record shows that Dr. Wright responded repeatedly to the plaintiff's requests for medical treatment; there is no evidence that he provided the plaintiff with anything other than proper medical care.

I.  **Standard of Review**

The burden is on the party moving for summary judgment to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson*, 477 U.S. at 248. "Unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or present mere speculation or conjecture. *See W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quotations and citations omitted). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence from which the jury could reasonably find for him. *See Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing

party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments they suggest. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

## II.   Facts[1]

Effective October 5, 2009, Commissioner Murphy, Warden Quiros and District Administrator Lajoie, all of whom are defendants, authorized a policy change to State of Connecticut Administrative Directive 6.14. Under the new policy inmates in Phase One of the Security Risk Group Threat Member ("SRGTM") and Administrative Segregation programs at Northern would be required to remain cuffed with their hands behind their backs during their one hour of recreation.

As of February 16, 2010, the plaintiff was confined at Northern. At that time, the Department of Correction had designated Northern as a facility to house those inmates who needed to complete the three-phase SRGTM and Administrative Segregation Programs.

As of September 27, 2010, correctional officials had designated the plaintiff as a SRGTM and also placed him in Administrative Segregation. State of Connecticut Administrative Directive 6.14 defines a SRGTM as an inmate "whose activity, behavior, status as a recognized

---

[1] The facts are taken from defendants' Local Rule 56(a)1 Statement [Doc. No. 44-2], the Affidavit and Exhibits attached to the Local Rule 56(a)1 Statement [Docs. Nos. 44-3, 44-4 and 46], the plaintiff's Local Rule 56(a)2 Statement [Doc. No. 57-1] and Affidavit with attached Exhibits [Doc. No. 57-2], and the Exhibits attached to the Complaint [Doc. No. 1].

SRGTM leader, and/or whose activity, behavior or involvement in an event associated with a Security Risk Group, jeopardizes the safety of the public, staff or other inmate(s) and/or the security and order of the facility." State of Connecticut Administrative Directive 9.4 defines Administrative Segregation as the "[p]lacement of an inmate on a restrictive housing status that results in the segregation of the inmate whose behavior or management factors pose a threat to the security of the facility or a risk to the safety of staff or other inmates and that the inmate can no longer be safely managed in general population."

Inmates designated as SRGTMs must participate in a three-phase program. Phase 1 is located in Unit Two East at Northern. Captain Butkiweicus is the Unit Manager of Unit Two East at Northern. As of November 18, 2010, the plaintiff was placed in Cell 218 in Unit Two East as a SRGTM to begin the first phase of the program. As a Phase 1 SRGTM inmate, the plaintiff remained in his cell for twenty-three hours a day. During the twenty-fourth hour, the plaintiff could participate in outside recreation. On weekends, however, Department of Correction officials did not offer recreation to inmates in Phase 1 of the SRGTM program.

From February 16, 2010 to March 31, 2010, and from September 27, 2010 to May 31, 2011, the plaintiff participated in outside recreation each day for one hour with a group of other inmates. All of the inmates in the recreation yard, including the plaintiff, had their hands cuffed behind their backs during the one-hour period.[2] On November 25, 2010, during his one-hour of recreation, the plaintiff observed another inmate slip his handcuffs from behind him to the front and stab another inmate who was still handcuffed in back.

---

[2] Captain Marinelli is the Unit Manager of Unit Three East at Northern. From September 27, 2010 to November 18, 2010, the plaintiff was housed in a cell in Unit Three East at Northern as an Administrative Segregation Phase 2 inmate.

4

Dr. Carson Wright is a physician licensed to practice medicine in the State of Connecticut. He is employed by the University of Connecticut Health Center, Correctional Managed Health Care and has been assigned to work at Northern for approximately twelve years. Dr. Wright treated the plaintiff during his confinement at Northern from at least February 2010 through May 2011.

### III. Discussion

The defendants include two arguments in support of their motion for summary judgment. They contend that: (1) they are entitled to qualified immunity with regard to the plaintiff's claim that he could not adequately exercise during the periods of February 16, 2010 to March 31, 2010, and from September 27, 2010 to May 31, 2011; and (2) Dr. Wright was not deliberately indifferent to the plaintiff's medical needs during those same periods.

#### A. Deliberate Indifference to Medical Needs

The plaintiff's Amended Complaint includes allegations that he experienced pain in his wrists and shoulders and numbness in his hands due to being cuffed behind his back during recreation periods. The plaintiff made requests to see someone from the medical department at Northern on five occasions from October 2010 to April 2011. The plaintiff acknowledges that Dr. Wright treated him at some point. The defendants argue that Dr. Wright was not deliberately indifferent to the plaintiff's medical needs. The plaintiff did not address this argument in his memorandum in opposition to the motion for summary judgment.

Deliberate indifference by prison officials to a prisoner's serious medical need constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must provide evidence of sufficiently

harmful acts or omissions and intent either to deny or delay unreasonably access to needed medical care or of the wanton infliction of unnecessary pain by prison personnel. *Id.* at 104-06. "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation," *id.*; rather, the conduct complained of must "shock the conscience" or constitute a "barbarous act." *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied sub nom. Foote v. Hathaway*, 513 U.S. 1154 (1995). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Thus, the fact that a prison official did not alleviate a significant risk that he should have but did not perceive does not constitute deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

Dr. Wright does not challenge the plaintiff's allegations that he suffered from serious medical needs during the period from October 2010 to April 2011. Rather, Dr. Wright contends that he was not deliberately indifferent to those needs.

The plaintiff's medical records reflect that from February 2010 through May 2011, he was under the care of Dr. Wright, other medical physicians, nurses, and medical and mental health staff at Northern. The plaintiff received treatment for or consideration of his various

medical complaints by medical and mental health personnel at Northern, including Dr. Wright, on more than twenty-five occasions during this period. (*See* Defs.' Mem. Supp. Mot. Summ. J., Ex. C, Medical Records at 3-17.)

The medical records reflect that Dr. Wright was responsive to the plaintiff's complaints about shoulder and wrist pain as well as hand numbness. On the dates that Dr. Wright treated the plaintiff for these complaints, he examined him and prescribed medication. (*See id.* at 6, 13, 15.) In June 2010, when the plaintiff complained about falling out of his bunk and injuring his back, Dr. Wright ordered medical personnel to admit the plaintiff to the infirmary for observation, prescribed medication to treat the plaintiff's pain, and ordered an x-ray of the plaintiff's lumbar spine. The x-ray revealed mild degenerative disc disease but no acute fracture or dislocation. (*See Id.* at 13-14, 41-43.)

The plaintiff avers that he asked Dr. Wright to speak to custody staff regarding the hand-cuffing policy, but that Dr. Wright refused to do so. (*See* Pl.'s Aff. at ¶ 9.) The plaintiff's medical records do not support this statement. Although the plaintiff has submitted a document indicating that on May 6, 2011, a mental health worker at Northern indicated that he would speak to Dr. Wright about the plaintiff's handcuffing status, there is no evidence that the psychologist ever spoke to Dr. Wright. (*See* Pl.'s Aff., Ex. G.) Furthermore, the plaintiff has conceded that he was no longer subjected to the hand-cuffing policy as of the end of May 2011.

Dr. Wright avers that the medical records reflect that he properly treated the plaintiff's complaints of shoulder and wrist pain and hand numbness and that the plaintiff's health was not adversely affected by the use of restraints. (*See* Defs.' Mem. Supp. Mot. Summ. J., Ex. C, Wright Aff.) The claim that Dr. Wright neglected to ask custody officials to remove the plaintiff

from restraint status to relieve his shoulder and wrist pain does not constitute deliberate indifference on the part of Dr. Wright, but rather the plaintiff's disagreement with Dr. Wright's diagnosis of the severity of the symptoms and treatment of those symptoms. Such a claim is not cognizable under the Eighth Amendment. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (noting that "[]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim," and "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation"); *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (disagreement with the type of medical care provided is insufficient to state a constitutional claim; rather "[t]he essential test is one of medical necessity and not one simply of desirability").

Because the plaintiff has failed to offer any evidence to contradict the results of physical examinations undertaken by Dr. Wright or the treatment prescribed by Dr. Wright and other medical professionals at Northern from February 2010 through May 2011, he has not demonstrated that Dr. Wright was deliberately indifferent to his serious medical needs. The court concludes that there are no issues of material fact in dispute regarding the attentive medical treatment provided by Dr. Wright and he is entitled to judgment as a matter of law. The motion for summary judgment is granted as to the Eighth Amendment claims for deliberate indifference to medical needs against Dr. Wright.

### B. **Qualified Immunity**

The defendants argue that, even assuming that the hand-cuffing policy was unconstitutional, they are entitled to qualified immunity. The defendants have the burden of proving the affirmative defense of qualified immunity. *See Vincent v. Yelich*, 718 F.3d 157, 166

(2d Cir. 2013).

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity on summary judgment, the court considers whether (1) the facts shown by the plaintiff would permit a reasonable jury to find a violation of a statutory or constitutional right by the official, and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (citation omitted). If the plaintiff fails to make such a showing or the right was not clearly established, the official is immune from monetary damages. *Pearson*, 555 U.S. at 236. The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to decide first in view of the particular circumstances. *See id.* at 236.

Under the second prong, a right is clearly established if, "at the time of the challenged conduct . . . every 'reasonable official would [have understood] that what he [was] doing violate[d] that right.'" *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court or Second Circuit need not have decided a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "A broad general proposition" does not constitute a clearly established right. *See Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). Rather, the constitutional right allegedly violated must be established "in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Id.* (quoting *Anderson*, 483 U.S. at 640).

The defendants do not address the first prong of the qualified immunity standard. Rather, they assume that the plaintiff has stated a violation of a constitutional right and argue that in 2010 and 2011 there was no clearly established Second Circuit or Supreme Court law holding that correctional officials must allow inmates in Phase 1 of the SRGTM Program or Phase 2 of the Administrative Segregation Program to exercise without handcuffs on. The defendants cite multiple district court cases within this circuit as well as two Connecticut Superior Court cases holding that recreating in restraints does not rise to the level of an Eighth Amendment violation. (*See* Defs.' Mem. Supp. Mot. Summ. at 4-6.) The defendants further contend that absent any law clearly establishing that an inmate has a right to be free from recreating in restraints, a reasonable officer would not have known that requiring Phase I SRGTM inmates and Phase 2 Administrative Segregation inmates to be hand-cuffed behind their backs during recreation was unconstitutional.

The Supreme Court has held that prisoners have no right to be housed in comfortable surroundings. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1980) (harsh or restrictive conditions are part of the penalty criminal offenders pay for their crimes). A prisoner's conditions of confinement, however, must meet "minimal civilized measures of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This means that prison officials are required to provide for an inmate's "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Both the Supreme Court and the Court of Appeals for the Second Circuit have concluded that exercise constitutes a basic human need that prison officials must provide to inmates under the Eighth Amendment. *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991); *Dumpson v.*

*McGinnis*, 348 Fed. Appx. 658, 659 (2d Cir. 2009); *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996); *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *Sostre v. McGinnis*, 442 F.2d 178, 193-94 & n. 25 (2d Cir. 1971). In 1996, however, the Second Circuit recognized that an inmate's right to some opportunity to exercise could be limited by legitimate safety and security concerns. *See Greifinger*, 97 F.3d at 704-05 (citing *Sostre*, 442 F.2d at 193.) Thus, at the time the defendants required the plaintiff to exercise in handcuffs behind his back, it was clearly established that an inmate had a right to engage in exercise, but one that could be limited by considerations of safety and security.

Here, there is a dispute as to whether the plaintiff could engage in meaningful exercise in or out of his cell. (*See* Pl.'s Aff. ¶¶ 7-8, Wright Aff. ¶¶ 6-10.) Furthermore, the defendants have submitted insufficient evidence to support any legitimate safety and security concerns behind the imposition on the plaintiff of the policy requiring SRGTM and Administrative Segregation inmates to be handcuffed behind their backs during recreation; indeed, the documents evidencing the policy that they have submitted with their summary judgment papers are not themselves self-justifying, i.e., they do not by themselves demonstrate that the policy is supported by legitimate safety and security concerns. Nor do they offer any evidence of potentially feasible alternative exercise arrangements that were considered in the case of the plaintiff prior to subjecting him to the hand-cuffing policy. *See Greifinger*, 97 F.3d at 704-05 (recognizing that deprivation of exercise must be limited to "unusual circumstances" and that feasibility of alternative opportunities for exercise must be considered before imposing restrictions on inmate exercise) (quoting *Mitchell v. Rice*, 954 F.2d 187, 193 (4th Cir.), *cert. denied*, 506 U.S. 905 (1992)). Meanwhile, the plaintiff has submitted evidence that alternative opportunities to engage in

11

exercise, such as doing calisthenics in his cell, were not available, because of space limitations in his cell and because the noise and vibration from in-cell exercise disturbed other inmates, some of whom asked him to refrain from working out in his cell.

This case is very similar to another case from this Court, *Taylor v. Murphy*, Case No. 3:10-cv-245 (HBF), which also involved Northern's handcuff requirement for certain inmates when outside their cells.[3] In *Taylor*, Magistrate Judge Fitzsimmons denied the defendants' motion for summary judgment on qualified immunity grounds because they had failed to submit evidence demonstrating that there was no genuine issue of material fact regarding their compliance with clearly established law governing an inmate's right to a meaningful opportunity to exercise. *Taylor v. Murphy*, Case No. 3:10-cv-245 (HBF), 2011 WL 1343883, at **4-6 (D. Conn. Apr. 7, 2011); *see also Williams v. Goord*, 142 F. Supp. 2d, 416 428-29 (S.D.N.Y. 2001) (denying motion for summary judgment on ground of qualified immunity because prison officials' belief that actions did not violate inmate's right to exercise would be unreasonable if jury were to find that restraints deprived inmate of meaningful out-of-cell exercise, in-cell exercise was not available, and no justification existed for use of restraints). The defendants cite Magistrate Judge Fitzsimmons' *later* decision in *Taylor*, in which she found, after a bench trial, that the plaintiff had failed to prove an Eighth Amendment violation and that the defendants had established the

---

[3]This case is not, however, similar to *Perez v. Murphy*, 3:12CV847(RNC) (D. Conn.), in which Judge Chatigny dismissed the handcuffing claim on qualified immunity grounds. In *Perez*, although the inmate briefly alleged that the cuffing of his hands behind his back during recreation deprived him of his right to exercise, he did not allege that the shackles were unwarranted in light of his disciplinary and other history, that there were no other meaningful opportunities for him to exercise (for example, in his cell), or that the defendants had failed to consider other alternatives. *See Perez v. Murphy*, 3:12CV847(RNC) (Doc. #1). His complaint focused on other claims.

defense of qualified immunity by proving the need for the handcuff requirement, the justification for applying that requirement to the plaintiff in that case, the availability to the plaintiff of a meaningful opportunity for exercise within his cell, and the fact that the defendants had relied on legal advice. *See Taylor v. Murphy*, 3:10-cv-245(HBF) (September 30, 2012) [Doc. # 96] at 26-29, 31-32.

The problem here is that the defendants - who include at least one individual who was also a defendant in *Taylor* and who are represented by the same legal office that represented the *Taylor* defendants – have to date made little effort to make the showings made in *Taylor*. For the most part, they have not attempted to submit with their summary judgment papers any of the types of particularized evidence described in Magistrate Judge Fitzsimmons' post-trial ruling, *see id.*; they have merely submitted general correctional policies describing the origin, rationale, and parameters of the handcuff requirement. While such materials are certainly relevant, they say little about the plaintiff's particular situation, e.g., whether the security measure of handcuffs was warranted given his history and whether lesser alternatives were considered in his case. *See Greifinger*, 97 F.3d at 705 (agreeing with Fourth Circuit's decision in *Mitchell v. Rice*, 954 F.2d 187 (4th Cir. 1992) and noting that, "the *Mitchell* court specifically found that it would not be possible to grant summary judgment to prison officials on their claim of qualified immunity, even in the case of an inmate who had been denied exercise because of his 'incorrigibly assaultive nature,' *without 'a detailed review of the feasibility of alternatives .... such as solitary out-of-cell exercise periods, or the adequacy of in-cell exercise.'"* (quoting *Mitchell*, 954 F.2d at 193); emphasis added.)

The defendants did submit one item of particularized evidence in the form of an affidavit

from Dr. Wright, who, in addition to discussing his treatment of the plaintiff, opined that the plaintiff's cell at Northern was large enough to afford him the opportunity to perform stretching and isometric exercises and calisthenics such as push-ups and sit-ups without disturbing his cellmate or inmates in nearby cells. That evidence, however, is opposed by multiple affidavits of the plaintiff and other inmates to the effect that the plaintiff's attempts to work out in his cell have disturbed other inmates and that other inmates have asked him to refrain from exercising in his cell.

The defendants have failed to show the absence of a genuine issue of material fact as to whether the plaintiff was afforded his Eighth Amendment right to a meaningful opportunity to exercise or as to whether, under the circumstances, their conduct was reasonable. Because the defendants have not met their burden on either prong of the qualified immunity standard, the motion for summary judgment is denied. *See Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (summary judgment on qualified immunity not appropriate when there are facts in dispute that are material to determination of reasonableness); *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996) (officers' qualified immunity could not be resolved as a matter of law because determination whether it was reasonable for officers to believe their actions met established legal principles depended on disputed version of facts).

## IV. Conclusion

The defendants' Motion for Summary Judgment [**Doc. No. 44**] is **GRANTED** as to the claim of deliberate indifference to medical needs against Dr. Wright and **DENIED** as to the claims against the remaining defendants with regard to the deprivation of exercise claim. Accordingly, all claims against Dr. Wright have been dismissed. The case proceeds only as to the

Eighth Amendment deprivation of exercise claim against the remaining defendants in their individual and official capacities.

**SO ORDERED** this 6th day of March, 2014, at Hartford, Connecticut.

/s/ MICHAEL P. SHEA

Michael P. Shea
United States District Judge