**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| _____ ) | |
| **JIMMY GARDNER,** ) | **CIVIL ACTION NO: 3:11cv572** |
| **Plaintiff,** ) | **(MPS)** |
| ) | |
| **vs.** ) | |
| ) | |
| **BRIAN MURPHY, LEO ARNONE,** ) | |
| **ANGEL QUIROS, DENNIS MARINELLI,** ) | |
| **CAPTAIN BUTKIEWICUS, EDWARD** ) | |
| **MALDONADO, MICHAEL LAJOIE,** ) | |
| **STEPHEN FAUCHER** ) | |
| **Defendants.** ) | |
| _____ ) | |

**SECOND AMENDED COMPLAINT**

## I. PRELIMINARY STATEMENT

1. Plaintiff, Jimmy Gardner ("plaintiff" or "Gardner"), is an inmate sentenced to the custody of the Connecticut Department of Corrections ("DOC") and currently housed at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut. Plaintiff claims violations of his Eighth Amendment right to be free of cruel and unusual punishment by defendants, Brian K. Murphy, Leo Arnone, Angel Quiros, Dennis Marinelli, David Butkiewicus, Edward Maldonado, Michael Lajoie, and Faucher (collectively "defendants") in their individual capacities, by, among other things, denying him the opportunity for meaningful recreation, by failing to protect him from the  substantial risk of harm, and by exhibiting deliberate indifference to his conditions of confinement. [1]

---

[1] The Court entered summary judgment in favor of defendant Carson Wright on plaintiff's claim for failure to intervene and provide medical treatment. Plaintiff reserves

2. **PLAINTIFF REQUESTS A TRIAL BY JURY.**

## II. JURISDICTION AND VENUE

3. This action is brought to remedy the deprivation, under color of state law, of rights guaranteed by the Eighth Amendment to the United States Constitution. The Court has jurisdiction pursuant to 42 U.S.C. § § 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343.

## III. PARTIES

4. Plaintiff, Jimmy Gardner is, and was at all times relevant to this complaint a United States Citizen. He is a resident of Connecticut committed to the supervision of the Connecticut Department of Corrections.

5. Defendant Brian K. Murphy is, and was at all times relevant to this complaint, the acting Commissioner of the DOC.

6. Defendant Leo Arnone is, and was at all times relevant to this complaint, a Corrections Officer ("C/O") employed by the DOC with the rank of Commissioner.

7. Defendant Angel Quiros is, and was at all times relevant to this complaint, a Corrections Officer employed by the DOC with the rank of Warden.

8. Defendant Dennis Marinelli is, and was at all times relevant to this complaint, a Corrections Officer employed by the DOC with the rank of Captain assigned to Northern Correctional Institution ("NCI"). At the time relevant to this complaint, defendant Marinelli was the Unit Manager of the Three East Unit.

---

the right to appeal the grant of summary judgment as to defendant Wright at the conclusion of this case.

9.  Defendant David Butkiewicus is, and was at all times relevant to this complaint, a Corrections Officer employed by the DOC with the rank of Captain assigned to NCI. The Unit Manager of the Two East Unit is defendant David Butkiewicus.

10. Defendant Edward Maldonado is, and was at all times relevant to this complaint, a Corrections Officer employed by the DOC with the rank of Warden assigned to NCI.

11. Defendant Michael Lajoie was at all times relevant to this complaint, a Corrections Officer employed by the DOC with the rank of District Administrator.

12. Defendant Stephen Faucher is, and was at all times relevant to this complaint, a Corrections Officer employed by the DOC with the rank of Deputy Warden assigned to NCI.

## IV. FACTS

13. At all times mentioned herein, each defendant was acting under color of state law.

14. The DOC operates NCI under its jurisdiction as the only designated "Super Maximum Security" institution in Connecticut.

15. At all times mentioned here, the NCI was the designated institution that houses all inmates committed to the DOC to serve a sentence and whom DOC has designated as either Administrative Segregation ("A.S."), chronic discipline, special need and/or Security Risk Group Safety Threat Member ("SRGSTM") inmates.

16. Within NCI there are several housing units. These units are One East, One West, Two East, Two West, Three East, and Three West.

3

17. Each unit has its own unit manager, who is responsible for, among other things, the overall management of their assigned units including staff and inmates.

18. Inmates designated as Security Risk Group Safety Threat Members are required to participate in a three-phase program at NCI.

19. Inmates in Phase I of the SRGSTM program are in the cells for the entire day, except for a one-hour recreation period Monday thru Friday. Saturdays and Sundays inmates are in their cells all day.

20. Inmates in Phase I of the SRGRSTM program are handcuffed when they are moved out of their cells for recreation.

21. Phase 1 of the SRGSTM program is located in Unit Two East.

22. On or about October 9, 2009, Defendants Brian K. Murphy authorized a policy change requiring inmates in Phase I of the SRGSTM Program to remain handcuffed during their recreation period with their hands behind their backs with metal handcuffs for their entitled one (1) hour exercise period.

23. The policy change has been enforced and carried out by defendants.

24. During the relevant time of the complaint, the DOC had designated plaintiff as a Security Risk Group Safety Threat Member (hereinafter also "SRGSTM").

25. Inmates designated as SRGSTM are required to participate in a three phase program at NCI.

26. From about February 16, 2010 to March 31, 2010 and from about September 27, 2010 to May 2011, plaintiff was handcuffed behind his back during recreation.

27. While handcuffing plaintiff in the back, defendants applied handcuffs that were too small and tight for plaintiff.

28. While handcuffed in the back, plaintiff complained to defendants on several occasions that the handcuffs were too tight and that the handcuffs hurt his shoulders and wrists.

29. Plaintiff asked defendants for looser or bigger cuffs.

30. Defendants would not accommodate plaintiff's request for looser or bigger sized cuffs.

31. Defendants continued to apply the small/tight handcuffs behind plaintiff's back further injuring his shoulders and wrists.

32. Plaintiff suffered injury to his shoulders and his wrists.

33. The Three East Unit is the designated housing unit for Phases One, Two, and Three of the A.S. Program.

34. Inmates in A.S. Phase Two are required to be handcuffed with their hands held in front of them during their entitled exercise periods for thirty (30) days. After successfully completing A.S. Phase Two, the inmates are then taken off of Cuff Status.

35. On or about September 27, 2010, plaintiff was placed in the Three East Unit as an A.S. Phase Two inmate.

36. From September 27, 2010 to November 18, 2010, defendant Marinelli ordered plaintiff's hands handcuffed behind his back during his exercise period. At the time, plaintiff was classified as an A.S. Phase Two Level Five prisoner and entitled to have his hands handcuffed in front of him.

37. On or about November 18, 2010, plaintiff was placed in Two East Unit Cell 218 as a SRGSTM Phase One inmate.

38. On or about November 25, 2010 during plaintiff's one-hour exercise period at approximately 0745, plaintiff witnessed another inmate stab a third inmate in the neck and facial area several times. The stabbed inmate was defenseless with his hands handcuffed behind his back. This incident had a severe impact on plaintiff's mental health, because he feared every time he went into the exercise area he would be attacked in a similar manner and unable to defend himself.

39. Plaintiff's cell at NCI is was located on the second level and measured approximately 7 by 12 Feet with two narrow metal bunk beds, a metal desk with a welded metal stool, a sink, and a toilet. These items are affixed to the wall and cannot be moved.

40. Inmates cannot meaningfully exercise due to their hands being handcuffed behind their backs during their entitled exercise period.

41. Inmates cannot meaningfully exercise in their cells.

42. Due to the nature of the cell furniture, plaintiff was unable to perform a proper calisthenics without injuring himself. In order to compensate for not being able to maintain a rigorous during plaintiff's one hour exercise period, he would attempt to run in place and do jumping jacks. While doing these exercises, the plaintiff would accidently smash his arms into the immovable, steel furniture, and exacerbate the injuries caused by the handcuffs to his shoulders and hands.

43. On October 18, 2010; November 16, 2010; January 2, 2011; and April 1, 2011, plaintiff requested to go to medical due to the pain from the improper spacing of the handcuffs. Plaintiff was experiencing pain in his shoulders caused by having his hands handcuffed behind him for an hour while he participated in his entitled

exercise period. Plaintiff told Dr. Carson Wright that after 45 minutes he would experience excruciating pain in his shoulders. Furthermore, he informed Dr. Wright that because of the metal cutting into his wrists, he would lose feeling in hands. It would take up to an hour for feeling to return to his hands after the cuffs had been removed. Dr. Wright prescribed 50 mg of Elavil and 800 mg of Motrin to plaintiff for the pain.

44. Plaintiff has continued to experience long term and residual pain along with diminished use of his shoulders and hands.

45. These continuing injuries are directly linked to the improper manner he was handcuffed while an A.S. Phase Two Level Five inmate.

46. The physical injuries and the pain in plaintiff's shoulders and hands have caused sleep deprivation which has further damaged plaintiff's health and well-being.

## V. COUNTS

## A. Count One- Eighth Amendment, 42. U.S.C. § 1983- Deprivation of Right to Meaningful Exercise

47. Plaintiff incorporates paragraphs 1 - 46, as if set forth fully herein.

48. With his hands cuffed behind his back, plaintiff was unable to get any meaningful exercise during his recreation period.

49. The lack of meaningful exercise poses an unreasonable threat to plaintiff's physical and mental health.

50. Defendants have denied plaintiff the opportunity for meaningful exercise and violated plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the U.S. Constitution.

51. Plaintiff has suffered damages as a result of defendants' violations.

**B. Count Two- Eighth Amendment, 42 U.S.C. § 1983- Deliberate Indifference to Conditions of Confinement**

52. Plaintiff incorporates paragraphs 1 - 46, as if set forth fully herein.

53. Plaintiff's hands were handcuffed behind his back as a result of the October 9, 2009 policy that defendants either promulgated and/or enforced directly on the plaintiff.

54. Plaintiff repeatedly complained and warned defendants that the handcuffs applied behind his back were too small and tight and caused him injury and pain to his shoulders and wrists.

55. By handcuffing plaintiff in the back with handcuffs that were too small and tight for his build, plaintiff suffered a serious deprivation to his health and safety.

56. Defendants knew that the handcuffs applied on plaintiff were too small and tight for him.

57. Defendants were deliberately indifferent to the serious threat to plaintiff's health and safety.

58. Defendants deliberately disregarded plaintiff's pleas for larger handcuffs and complaints that the handcuffs used caused physical injury and pain and suffering.

59. Defendants exhibited deliberate indifference to plaintiff's inhumane conditions of confinement and violated plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the U.S. Constitution.

60. Plaintiff has suffered damages as a result of defendants' violations.

**C. Count Three- Eighth Amendment, 42 U.S.C. § 1983- Failure to Prevent Harm**

61. Plaintiff incorporates paragraphs 1 - 46, as if set forth fully herein.

8

62. Plaintiff's hands were handcuffed behind his back as a result of the October 9, 2009 policy that defendants either promulgated and/or enforced directly on plaintiff.

63. Plaintiff repeatedly complained and warned defendants that the handcuffs applied behind his back were too small and tight and caused him injury and pain to his shoulders and wrists.

64. By handcuffing plaintiff in the back with handcuffs that were too small and tight for his build, plaintiff suffered a serious deprivation to his health and safety.

65. Defendants knew that the handcuffs used on plaintiff were too small and tight for him and that plaintiff faced substantial risk of serious harm.

66. Defendants were deliberately indifferent to the serious threat to plaintiff's health and safety.

67. Defendants deliberately disregarded the risk of harm by failing to take reasonable measures to prevent the harm.

68. Defendants' failure to prevent injury to plaintiff violated plaintiff's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment to the U.S. Constitution.

69. Plaintiff has suffered damages as a result of defendants' violations.

## VI. PRIOR LAWSUITS AND PREVIOUSLY DISMISSED ACTIONS OR APPEALS

Plaintiff has not filed other lawsuits in state or federal court dealing with the same facts involved in this action. Plaintiff has not filed any other lawsuits related to the conditions of confinement.

Plaintiff has not brought any civil actions or appeals that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff claims:

1. Compensatory damages;

2. Punitive damages;

3. Costs, expenses, and attorney's fees;

4. An order that defendants provide plaintiff with an opportunity of at least five (5) hours of meaningful exercise each week by not handcuffing him during his entitled one hour of exercise period;

5. Any other relief as law and equity may provide.

THE PLAINTIFF

By: /s/Robert B. Mitchell
Robert B. Mitchell (ct02662)
Mitchell & Sheahan, P.C.
80 Ferry Blvd., Suite 102
Stratford, Connecticut 06615
Tel.: (203) 873-0240
rbmitchell@mitchellandsheahan.com

## **CERTIFICATION**

I hereby certify that on December 22, 2015, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Robert B. Mitchell*
Robert B. Mitchell